[No. 30861-1-I.   Division One.   June 14, 1993.]

JAMES NEFF, ET AL, *Appellants*, v. ALLSTATE INSURANCE COMPANY, *Respondent*.

*Richard C. Platte* and *Rusing & Platte,* for appellants.

*Wayne Murray, Donald L. Unger,* and *Murray, Dunham & Murray,* for respondent.

KENNEDY, J. — Appellants James and Martha Neff appeal (1) the trial court's grant of summary judgment in favor of respondent Allstate Insurance Company (Allstate) and (2) the trial court's implicit vacating of a prior agreed order requiring arbitration of the Neffs' underinsured motorist claim. We affirm.

FACTS

James Neff was injured November 6, 1987, when his car was hit from the rear by a vehicle driven by Terri A. Ranniger. At the time of the accident Ms. Ranniger had car insurance with liability limits of $50,000.

Mr. and Mrs. Neff sued Ms. Ranniger for injuries and damage resulting from Ms. Ranniger's allegedly negligent conduct. Ranniger admitted liability, but disputed damages. Thereafter, Ms. Ranniger and the Neffs agreed to transfer their case to mandatory arbitration, pursuant to RCW 7.06, and stipulated that the arbitrator's jurisdictional limit be raised from $35,000 to $50,000.

On July 8, 1991, the Neffs initiated a second action, against Allstate, based on the underinsured motorist coverage which the Neffs purchased from Allstate before the accident. Allstate refused to arbitrate and the Neffs filed a motion to compel arbitration pursuant to the provisions of the underinsured motorist contract. On September 20, 1991, this motion was heard by Judge Nichols, who ruled in favor of the Neffs. Following this hearing the parties presented an agreed order requiring arbitration of the underinsured motorist claim, which Judge Nichols signed.

Next, in the first case, a mandatory arbitration hearing was held on November 21, 1991. The arbitrator found in favor of the Neffs and against Ms. Ranniger, awarding the Neffs $26,000 in damages and $690.63 in costs.[1] The arbitrator's award was reduced to judgment and filed with the Whatcom County Superior Court on December 17, 1991.

---

[1] The Neffs attempted to show in excess of $100,000 in damages, but requested only $50,000 in view of the stipulated cap on the arbitrator's jurisdiction.

Ranniger paid the Neffs and a full satisfaction of judgment was acknowledged and filed by the Neffs on December 31, 1991.

In May 1992, Allstate filed a motion for summary judgment in the second case, requesting a declaration that the Neffs were collaterally estopped from relitigating their damages in the upcoming arbitration. On May 29, 1992, Judge Moynihan found that "[the Neffs] are collaterally estopped from relitigating the issues previously determined by mandatory arbitration, including specifically the issue of damages suffered." The Neffs filed a timely appeal.

## DISCUSSION

■When reviewing a summary judgment ruling, the appellate court is required, as was the trial court, to review the material submitted for and against the motion in the light most favorable to the party against whom the motion is made. *United Pac. Ins. Co. v. Boyd*, 34 Wn. App. 372, 375, 661 P.2d 987 (1983). Summary judgment is available only where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Boyd*, 34 Wn. App. at 375; CR 56(c).

1. Collateral Estoppel.

■ The burden of proof as to the propriety of applying collateral estoppel is on Allstate. All facts and inferences must be viewed in the light most favorable to the Neffs and judgment should be granted in favor of Allstate only if, from all the evidence presented, reasonable persons could reach but one conclusion. *State Farm Mut. Auto. Ins. Co. v. Amirpanahi*, 50 Wn. App. 869, 871, 751 P.2d 329, *review denied*, 111 Wn.2d 1012 (1988).

■ The Neffs first contend that mandatory arbitration cannot be the basis for collateral estoppel because there has not been a "prior adjudication". We disagree. Arbitration is one form of adjudication.

[S]ince 1860 the Washington legislature has endorsed the use of arbitration procedures as a substitute for court trials and

allowed for judicial enforcement of the awards resulting therefrom.

*Dunlap v. Wild*, 22 Wn. App. 583, 586-87, 591 P.2d 834 (1979). Here, the result of the first adjudication was a final judgment in the Superior Court for Whatcom County.

■ Moreover, an arbitration proceeding may be the basis for collateral estoppel or issue preclusion. *Dunlap*, 22 Wn. App. at 584 (holding that a purchaser of securities, who was unhappy with an arbitration award he won against a stock brokerage firm, was precluded by collateral estoppel from raising the same issues in a suit against the firm's salesman); *Robinson v. Hamed*, 62 Wn. App. 92, 96-97, 813 P.2d 171 (holding that an appellant was collaterally estopped from relitigating the issue of the truth of the respondent's story concerning their fight at the airport because of the prior arbitration decision concerning that issue), *review denied*, 118 Wn.2d 1002 (1991).

■ For the doctrine to apply, the following elements must be met:

> (1) identical issues; (2) a final judgment on the merits; (3) the party against whom the plea is asserted must have been a party to or in privity with a party to the prior adjudication; and (4) application of the doctrine must not work an injustice on the party against whom the doctrine is to be applied.

*Shoemaker v. Bremerton*, 109 Wn.2d 504, 507, 745 P.2d 858 (1987) (quoting *Malland v. Department of Retirement Sys.*, 103 Wn.2d 484, 489, 694 P.2d 16 (1985); citing *Rains v. State*, 100 Wn.2d 660, 674 P.2d 165 (1983)).

In the present case, the first three elements of the doctrine are easily satisfied. The main issue in the present action is a damages question — how much of the damage resulting from the accident, if any, does Allstate have to pay for? In the first arbitration damages was the sole issue arbitrated. The second element is met since the first arbitration ended in a final judgment on the merits and the judgment was satisfied. The third element is met since the Neffs were

parties to the first arbitration and are parties to these proceedings.

■ The remaining element requires that application of the doctrine not work an injustice. The Neffs assert that application of the collateral estoppel doctrine would work an injustice against them because the procedures differ in mandatory arbitration and underinsured motorist arbitration. However, procedural differences in the two proceedings will not necessarily bar application of collateral estoppel. Rather, Washington courts focus on whether the parties to the earlier proceeding had a full and fair hearing on the issue. *Robinson*, 62 Wn. App. at 100; *Dunlap*, 22 Wn. App. at 591. *Cf. Shoemaker*, 109 Wn.2d at 519-20.

In *Shoemaker* the Washington Supreme Court addressed the argument that collateral estoppel should not apply where there are procedural differences in the administrative hearings and the court proceedings. The court held that a civil service commission proceeding could be a basis for application of collateral estoppel in a subsequent lawsuit, even with the procedural differences in the two forums, where the plaintiff had received notice, had an opportunity to present evidence and legal arguments and where there was finality to the administrative proceedings. *Shoemaker*, 109 Wn.2d at 519-20. *See also Greenblatt v. Drexel Burnham Lambert, Inc.*, 763 F.2d 1352 (11th Cir. 1985) (arbitration proceeding given collateral estoppel effect in subsequent securities suit because the appellant had full and fair opportunity to litigate the issue); *Sullivan v. American Airlines, Inc.*, 613 F. Supp. 226, 230 (S.D.N.Y. 1985) (holding that the burden of showing that there was not a full and fair opportunity to litigate rests on the party opposing preclusion).

Here, the Neffs fail to establish how the differences between the underinsured motorist arbitration procedures and the mandatory arbitration procedures caused them prejudice. The mandatory arbitration was governed by the mandatory arbitration rules, which gave the Neffs the right to

call witnesses, cross-examine adverse witnesses, submit documentary evidence and appeal an adverse result. MAR 5.3, 7.2. Thus, the Neffs received a full and fair opportunity to litigate the damages issue at the mandatory arbitration hearing.

Next, the Neffs contend that they have a contractual right to arbitrate their underinsured motorist claim, regardless of the prior arbitration. There is some case law supporting this contract rights theory.

In *Detroit Auto. Inter-Ins. Exch. v. Kurak*, 81 Mich. App. 217, 218-19, 265 N.W.2d 86, 87 (1978), the Michigan Court of Appeals held that when an insured is covered by more than one insurance policy and recovers an award in arbitration within the limits of one policy, he may still demand arbitration under the other policies for the same claim, provided that he is compensated only once for any damage suffered. *Kurak*, at 218-19. The court noted that "[n]either a release of one insurer nor an arbitration award against one insurer affects the insured's rights under another contract." *Kurak*, at 219-20.[2]

In contrast, however, Division Three of this court recently addressed and rejected a contract rights argument similar to the one presented here. *See Girtz v. New Hampshire Ins. Co.*, 65 Wn. App. 419, 423, 828 P.2d 90 (1992). In *Girtz*, Mr. Girtz was driving his employer's car when Bonnie Rice's car hit him. Ms. Rice had insurance limits of $300,000. Mr. and Ms. Girtz sued Ms. Rice and won a jury verdict of $225,000. The Girtzes did not appeal the award. Instead, they brought an action against New Hampshire Insurance Company, seeking to recover underinsured motorist benefits. The trial court granted summary judgment to New Hampshire, dismissing the second action. The reviewing court affirmed, ruling that the underinsured motorist claim was

---

[2] In *State Farm Mut. Auto. Ins. Co. v. Amirpanahi*, 50 Wn. App. 869, 873, 751 P.2d 329, *review denied*, 111 Wn.2d 1012 (1988), although ruling on a different basis, the Washington Court of Appeals, Division One, noted in dictum its agreement with *Kurak*, so long as there is no double recovery.

barred by collateral estoppel, even though the first adjudication sounded in tort and the second action sounded in contract. The court found that the four elements of collateral estoppel were met and, therefore, any damages in the contract action were controlled by the damages awarded in the tort action. *Girtz*, 65 Wn. App. at 422-23.

The present case is quite similar to *Girtz*. The first action sounded in tort and the second action in contract. The damages issue was resolved in the first adjudication. The damages award was intended to be full compensation for the injury and was less than the liability limit of the negligent driver's insurance policy.

The underinsured coverage provision at issue here provides that:

> [Allstate is] not obligated to make any payment under this coverage until after the limits of all liability protection in effect and applicable at the time of the accident have been exhausted by payment of judgments or settlements.

Under the terms of the contract, Allstate is not obligated to pay unless there are damages to its insured in excess of the amount that the tortfeasor is insured for. Thus, the Neffs do not lose any contract rights by this court's ruling.

In sum, we adhere to *Girtz* and hold that the Neffs' underinsured motorist claim is barred by the doctrine of collateral estoppel.

2. Agreed Order on Order To Show Cause.

The Neffs contend that the relief requested by Allstate in its motion for summary judgment was previously heard and denied on September 20, 1991, by Judge Nichols and, therefore, Allstate is bound by the earlier order to arbitrate and not entitled to summary judgment. We disagree.

Judge Nichols ruled on the issue of whether an endorsement to the Neffs' policy (saying that both sides had to agree to arbitrate before arbitration was required) controlled, in view of the Neffs' denial that they ever received a copy of the endorsement. Judge Nichols ruled that the parties were required to arbitrate. Thereafter, the parties entered into an

804

agreed order, selecting one of the two methods the policy set forth for selecting the arbitrators.

Judge Moynihan ruled on whether collateral estoppel applied, an entirely different issue from the issue before Judge Nichols. There was no error. We affirm.

PEKELIS, A.C.J., and SCHOLFIELD, J., concur.

Reconsideration denied July 22, 1993.

Review denied at 123 Wn.2d 1004 (1994).